# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                         )
                                               )         **JUDGE RICHARD L. SPEER**
Thomas and Jennifer Stough                     )
                                               )         Case No. 11-35232
    Debtor(s)                                 )
                                               )

## DECISION AND ORDER

This cause comes before the Court on the Motion of The Toledo Hospital, Inc. for Leave to File an Adversary Complaint. (Doc. No. 32). For its Motion, the Movant requests that it be permitted to file a complaint to determine the dischargeability of a particular debt against the Debtor outside the limitation's period prescribed by Bankruptcy Rule 4007(c). The Debtor filed a response thereto, objecting to the Movant's request for relief. (Doc. No. 37).

An evidentiary hearing was then held on the dispute between the Parties. (Doc. No. 41). At the conclusion of the Hearing, the Court deferred ruling on the matter so as to afford the opportunity to thoroughly consider the evidence and the matters raised by the Parties. The Court has now had this opportunity and, for the reasons set forth below, finds that the Motion of The Toledo Hospital should be Denied.

## FACTS

From 2008 through 2010, the Debtor, Jennifer Ann Stough (hereinafter the "Debtor"), received disability payments pursuant to Ohio's law regarding workers' compensation. This compensation was awarded for injuries the Debtor was found to have sustained in 2006 while employed with The Toledo Hospital. The compensation to the Debtor was paid by The Toledo Hospital, who is a self-insured employer for purposes of workers' compensation. (Doc. No. 32, Ex.

In re: Thomas and Jennifer Stough
Case No. 11-35232

1). For her workers' compensation claim, the Debtor was represented by legal counsel, a Ms. Joan Rife. The Toledo Hospital was also represented by legal counsel, a Mr. Scalzo of the law firm of Marshall & Melhorn, LLC.

In 2011, The Toledo Hospital brought an action with the Industrial Commission of Ohio to have the workers' compensation award to the Debtor set aside on the basis of fraud. On August 4, 2011, after an evidentiary hearing, the Industrial Commission of Ohio issued its decision, finding that the Debtor committed fraud in connections with her workers' compensation claim. As a part of this determination, the Industrial Commission of Ohio set forth that The Toledo Hospital had made an overpayment to the Debtor in the approximate amount of $62,000.00. On August 30, 2011, an appeal of this decision was refused by the Full Industrial Commission.

On September 28, 2011, the Debtor and her husband, Thomas Stough, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). In the schedules filed with her petition, the Debtor disclosed unsecured liabilities totaling $101,618.79. Included among these obligations was a joint debt owed to Promedica Health System in the amount of $184.44.

The Debtor also disclosed an unsecured debt owed to The Toledo Hospital in the amount of $62,957.73. For this obligation, the Debtor's schedules, and the mailing matrix attached to her petition, gave this address for The Toledo Hospital: "3142 Cove Blvd., Toledo, OH 43606." In actuality, however, the street address for The Toledo Hospital is 2142 North Cove Blvd.

The mailing matrix attached to the Debtor's petition also included the following entities: (1) Marshall & Melhorn; (2) ProMedica Health Systems; and (3) V & A Risk Services. For these entities, the first, Marshall & Melhorn, serves as legal counsel for The Toledo Hospital. The second entity, ProMedica Health Systems is a medical billing agent for multiple entities, including The

Page 2

In re: Thomas and Jennifer Stough
Case No. 11-35232

Toledo Hospital. Finally, it was represented that the last entity, V & A Risk Services, is contracted by The Toledo Hospital for management services related to workers' compensation claims.

On September 29, 2011, this Court issued a notice providing, *inter alia*, that the deadline to object to the Debtor's discharge or challenge the dischargeability of a particular debt was set for January 17, 2012. (Doc. No. 7). Notice of this deadline was sent by the Bankruptcy Noticing Center, via first class mail, to Marshall & Melhorn, The Toledo Hospital and V & A Risk Services according to the respective addresses provided in the Debtor's mailing matrix. (Doc. No. 9). Notice was sent by the Bankruptcy Noticing Center to Promedica via Electronic Transmission. *Id*. The Court's docket does not reflect that any of the notices sent by mail were returned to the Court. (Doc. No. 6).

In the time period immediately following the commencement of the Debtor's bankruptcy case, Attorney Scalzo, as legal counsel for The Toledo Hospital, was in communication with Attorney Rife, Debtor's legal counsel in the workers' compensation matter. During the communications, Mr. Scalzo was advised that the Debtor would be obtaining new legal counsel.

On December 20, 2011, Mr. Scalzo filed a complaint in Common Pleas Court on behalf of The Toledo Hospital, seeking recovery of the overpayments the Debtor was determined to have received from her workers' compensation claim. On January 13, 2012, the Common Pleas Court mailed a notice to The Toledo Hospital that its attempt to serve the Debtor was unsuccessful. On January 23, 2012, the Complaint was again sent to the Debtor, this time by ordinary mail. On February 2, 2012, Attorney, Scott A. Ciolek, who had been retained by the Debtor as her legal counsel in this bankruptcy case, filed an answer and a counterclaim to the Complaint of The Toledo Hospital. In her counterclaim, the Debtor alleged a violation of the Bankruptcy Code's automatic stay and an abuse of process.

Page 3

In re: Thomas and Jennifer Stough
Case No. 11-35232

## DISCUSSION

In the matter before the Court, The Toledo Hospital seeks leave to file a complaint against the Debtor to determine the dischargeability of a particular debt. A matter such as this, because it will ultimately determine whether the claim of The Toledo Hospital is subject to this Court's order of discharge, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, on the Motion brought by The Toledo Hospital, this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

An individual debtor, such Jennifer Stough, who seeks relief under Chapter 7 of the United States Bankruptcy Code does so with the aim of receiving "an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). The entry of a bankruptcy discharge generally enjoins any creditor, holding a prepetition claim against a debtor, from pursuing that claim against the debtor as a personal liability. 11 U.S.C. § 524(a). The entry of a bankruptcy discharge is intended to afford a debtor a fresh start, a core policy aim of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Policy aims, however, have also given rise to certain categories of debts which are excluded from the scope of a bankruptcy discharge. The types of debts not subject to the bankruptcy discharge are set forth in § 523(a) of the Bankruptcy Code. In § 523(a), there are listed 19 categories of nondischargeable debts. A creditor holding any one of the types of debts described in § 523(a) is entitled to pursue their claim against the debtor, notwithstanding the entry of a bankruptcy discharge.[1]

---

[1] Subject, of course, to the automatic stay of 11 U.S.C. § 362(a), as well as any other limitations imposed by bankruptcy law or applicable nonbankruptcy law.

Page 4

In re: Thomas and Jennifer Stough
Case No. 11-35232

For most of the 19 categories of debts described in § 523(a), no deadline is imposed on any party seeking a dischargeability determination. FED.R.BANKR.P. 4007(b). The practicable consequence of this is that the debtor will normally be the party to bring an action to determine dischargeability, although nothing prevents a creditor from bringing such an action. *See* FED.R.BANKR.P. 4007(a). An action to determine dischargeability is deemed an adversary proceeding, and is commenced by the filing of a complaint. FED.R.BANKR.P. 7001(6) & 7003.

For three categories of debts described in § 523(a), however, the burden of requesting a determination of nondischargeability is expressly placed upon the creditor. 11 U.S.C. § 523(c). A time limit for bringing such a request is also imposed. FED.R.BANKR.P. 4007(c) This time limit is set at 60 days, commencing after the first date set for the meeting of creditors under § 341(a). *Id.* If the creditor does not act within this prescribed time frame, the debt becomes subject to the court's entry of an order of discharge.

The type of debts subject to the deadline are set forth in paragraphs (a)(2), (4) and (6) of § 523(a). Respectively, these provisions operate to except from discharge any debt arising from a debtor's fraudulent conduct, any debt created on account of a debtor's misappropriation of another's property, and any debt arising from an injury caused by a willful and malicious act committed by the debtor.

As a matter of construct, the 60-day time limit, as imposed upon a creditor to bring an action to determine discharegeablity for the types of debts contained in paragraphs (a)(2), (4) and (6) of § 523(a), arises from the interplay of Bankruptcy Code § 523(c)(1) with Bankruptcy Rule 4007(c). Section 523(c) of the Bankruptcy Code provides:

> . . . the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court

Page 5

> determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

In turn, Bankruptcy Rule 4007(c) states:

> . . . a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

These provisions further two bankruptcy goals. One, they promote the prompt administration of bankruptcy cases; second, they further the fresh-start goal of the Bankruptcy Code by affording the debtor the opportunity to enjoy finality and certainty of relief from financial distress as quickly as possible. *In re Boltz-Rubinstein*, 454 B.R. 614, 619 (Bankr. E.D.Pa. 2011)

In this case, based upon the finding of fraud made against the Debtor by the Industrial Commission of Ohio, The Toledo Hospital asserts that the claim it holds against the Debtor falls within the scope of one or more of the categories of debts set forth in paragraphs (a)(2), (4) and (6) of § 523(a). For its claim, The Toledo Hospital acknowledges that it did not file a complaint to determine dischargeability against the Debtor within the 60-day time period set forth in Bankruptcy Rule 4007(c), *supra*. In addition, no assertion was made by The Toledo Hospital that it sought, prior to the expiration of the 60-day time limitation, to have the time period enlarged as is allowed and specifically contemplated by Bankruptcy Rule 4007(c).

Notwithstanding these circumstances, The Toledo Hospital argues that, pursuant to its Motion, leave should be afforded to file an adversary complaint. In support of this position, The Toledo Hospital advances two points. First, The Toledo Hospital contends that it did not have notice of the Debtor's bankruptcy in time to permit it to file an adversary proceeding. Second, The Toledo

In re: Thomas and Jennifer Stough
Case No. 11-35232

Hospital takes the position that, even if it is deemed to have had timely notice of the Debtor's bankruptcy, this Court should, based upon the equities of this case, allow it to file an adversary proceeding outside the time limitation imposed by Bankruptcy Rule 4007(c). Each of these points will now be addressed.

## NOTICE

The position of The Toledo Hospital, that it did not have notice of the Debtor's bankruptcy in time to permit it to file an adversary proceeding, is premised on two assertions. First, when the Debtor sought bankruptcy relief, she scheduled an improper address for The Toledo Hospital. According to The Toledo Hospital, this error meant that it did not receive actual notice of the Debtor's bankruptcy in a timely manner. Second, The Toledo Hospital maintains that, while actual notice was provided to three entities acting as its agents, such notice should not be imputed to it because receiving bankruptcy notices was not within the scope of the agents' authority. In her response to the Motion filed by The Toledo Hospital, the Debtor controverted both of these conclusions.

Notice and an opportunity to be heard are elementary and fundamental requirements of constitutional due process in any proceeding which is to be accorded finality. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950). It is, therefore, beyond reproach that inadequate notice to a creditor of a debtor's bankruptcy will preclude the discharge of the creditor's claim.[2] *See, e.g., Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3rd Cir. 1995)

---

2
Other remedies, otherwise available to a debtor in a bankruptcy case, may also be precluded against a creditor who does not have adequate notice of a debtor's bankruptcy case. For example, a creditor without notice of a debtor's bankruptcy is not subject to a claim for damages for a violation of the Bankruptcy Code's automatic stay. 11 U.S.C. § 362(k) (providing that statutory damages are recoverable upon a finding that the creditor committed a "willful violation

Page 7

("Inadequate notice is a defect which precludes discharge of a claim in bankruptcy."). This principle is partially codified in § 523(a)(3), which generally excepts from discharge any debt not listed in a debtor's bankruptcy schedules.

The requisite notice, for parties affected by a debtor's bankruptcy, is embodied in Bankruptcy Code § 342(a). Section 342(a) provides that "[t]here shall be given such notice as is appropriate, including notice to any holder of a community claim, of an order for relief in a case under this title." As used in this provision, appropriate notice requires that, at a minimum, the notice comport with established standards of constitutional due process. *Jeld–Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3rd Cir. 2010). To pass constitutional muster, any notice affecting another's rights must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

To facilitate and to help ensure appropriate notice is provided to creditors for purposes § 342(a), the Bankruptcy Rules require a debtor to file, in a voluntary case, "a list containing the name and address of each entity included or to be included on Schedules D, E, F, G, and H as prescribed by the Official Forms." FED.R.BANKR.P. 1007(a)(1). It is from this list, and the addresses designated therein by the debtor, which the clerk of courts utilizes to send notices of the debtor's bankruptcy to creditors. FED.R.BANKR.P. 2002(f)(1)/(g)(2).[3] This means that when a bankruptcy case is first commenced by a debtor, the "only information about the identities and addresses of creditors

---

of a stay," which presumes knowledge of the bankruptcy case).

[3] In a particular bankruptcy case, a creditor may later designate a different address. Bankruptcy Rule 2002(g)(1) provides that "[n]otices required to be mailed under Rule 2002 to a creditor, indenture trustee, or equity security holder shall be addressed as such entity or an authorized agent has directed in its last request filed in the particular case."

Page 8

**In re: Thomas and Jennifer Stough**
**Case No. 11-35232**

to be served with the case notices comes from the debtor." *In re Hicks*, 184 B.R. 954, 957 (Bankr. C.D.Cal.1995). The burden is, therefore, placed upon a debtor to ascertain the correct address of his or her creditors so that they may be afforded appropriate notice. *In re O'Shaughnessy*, 252 B.R. 722, 734 (Bankr. N.D.Ill. 2000); *see also Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1103 (5th Cir.1984) ("It is clear that one of the primary purposes of the list of creditors in the schedules is to provide to the court information as to persons entitled to notice.").

For her burden, the Debtor acknowledges that she did not properly schedule the address of The Toledo Hospital. It is the position of the Debtor, however, that despite having scheduled an improper address, The Toledo Hospital still had adequate notice of her bankruptcy because the addressing error was minor. Even if not the case, the Debtor controverts the position of The Toledo Hospital that the notices sent to its agents cannot be imputed to it. After consideration, the Court agrees with the Debtor's first point.

While the Debtor bears the burden to provide the correct address of her creditors, the Bankruptcy Code provides no specific guidance as to what constitutes the proper address of a creditor. *In re O'Shaughnessy*, 252 B.R. at 729. In fact, neither the Bankruptcy Code nor Rules state that a creditor be listed at a particular address and, thus, there is no requirement that an entity, such as The Toledo Hospital, be listed at its home office or principal place of business. *WebMD Practice Servs. v. Sedlacek (In re Sedlacek)*, 325 B.R. 202, 212 (Bankr. E.D.Tenn.2005). This is inapposite to the rules governing service of process for an adversary complaint which, in following the Federal Rules of Civil Procedure, are more detailed as to the steps necessary to accomplish proper notice. FED.R.BANKR.P. 7004.

In the absence of such guidance, it is clear to the Court that the appropriate notice requirement of § 342(a) necessarily follows the constitutional due process requirement that such notice be reasonably calculated, under all the circumstances, to apprise interested parties of the

Page 9

In re: Thomas and Jennifer Stough
Case No. 11-35232

pendency of the action and afford them an opportunity to present their objections. *In re O'Shaughnessy*, 252 B.R. at 729; *In re Sedlacek*, 325 B.R. at 211. For this purpose, errors in scheduling a creditor's address, so long as minor, do not render the notice sent to the improper address insufficient. The case of *Ford Motor Credit Co. v. Weaver*, 680 F.2d 451 (6th Cir. 1982), as decided by the Sixth Circuit Court of Appeals, is directly on point.

In *Ford Motor Credit Co. v. Weaver*, the Court was presented with the question as to whether a creditor in a bankruptcy proceeding could be considered duly scheduled for notice purposes when an incorrect address was given by the debtor.[4] On this issue, the Court explained:

> Courts have not adopted a per se rule as to what constitutes a duly scheduled debt. Instead, whether a debt is duly scheduled usually depends upon the facts of each case. In deciding whether a debt is duly scheduled, the extent to which the schedule fulfills the purpose of Section 7a(8) of the Bankruptcy Act is a significant factor. The purpose of the scheduling requirement is to enable creditors to receive timely notice of bankruptcy proceedings which may affect their interests. Consequently, an error in listing a creditor's residence or address does not necessarily cause the debt to not be duly scheduled.

*Id.* at 456 (internal citations omitted).

The Court then went on to give detailed guidance of the circumstances under which minor errors in scheduling a creditor's address would not prevent a finding that the creditor received adequate notice:

---

[4]

In *Ford Motor Credit Co. v. Weaver*, the Court was specifically addressing the noticing requirement of § 7a(8) of the Bankruptcy Act – which like § 342(a) governs, among other matter, noticing and the scheduling of creditors. It is substantially similarly to § 342(a), providing in pertinent part that: "The bankrupt shall (8) prepare, make oath to, and file in court . . . a list of all his creditors showing their residences or places of business, if known, or if unknown that fact to be stated . . .[.]"

Page 10

> Certain errors made in listing a creditor's address do not preclude a determination that the debt has been duly scheduled. A debt may, in certain circumstances, be duly scheduled where the bankrupt debtor lists the town, city, or county correctly but omits the street and number. If the creditor's street, city, town or state is listed incorrectly, however, the debt is not duly scheduled. It is unlikely that a creditor will receive notice of the bankruptcy proceedings if the schedule lists an incorrect street, city, town or state.

*Id.* at 456-57 (internal citations omitted).

In this case, the Debtor listed the address of The Toledo Hospital as "3142 Cove Blvd., Toledo, OH 43606." In actuality, however, the street address for The Toledo Hospital is 2142 North Cove Blvd. The address provided by the Debtor, thus, omitted the directional designation and was off by one digit on the number of the street address for The Toledo Hospital.

When set against the exemplar given in *Ford Motor Credit Co.* these errors must be considered minor and unlikely to have deprived The Toledo Hospital of receiving notice of the Debtor's bankruptcy. Specifically, the Debtor's situation, by properly listing the town and city of The Toledo Hospital, corresponds closely to the first example given in *Ford Motor Credit Co.*, setting forth that a "debt may, in certain circumstances, be duly scheduled where the bankrupt debtor lists the town, city, or county correctly but omits the street and number." Furthermore, consistent with this statement, additional circumstances indicate that The Toledo Hospital would have actually received the notice sent by the Bankruptcy Noticing Center.

First, no returned mail was received in this case. It, therefore, can be presumed that the notice designated for The Toledo Hospital was actually delivered. *See Matter of Depoy*, 29 B.R. 471, 477 (Bankr. N.D.Ind.1983) ("Where notice has been mailed to the correct and current address and the item is not returned, delivery is presumed."). It is also reasonable to assume that the delivery would have been actually made to The Toledo Hospital, since The Toledo Hospital is a major medical

Page 11

In re: Thomas and Jennifer Stough
Case No. 11-35232

provider and covers a large geographic area, making it likely that the post office would have recognized and cured the minor defects in the address listed by the Debtor. Both these conclusions are reinforced by the lack of any contradictory evidence offered by The Toledo Hospital.

Viewed from this perspective, the Court is persuaded that The Toledo Hospital received the September 29, 2011 notice of the Debtor's bankruptcy as sent by the Bankruptcy Noticing Center. Accordingly, since it was afforded to January 17, 2012 to file a complaint to determine dischargeability, the notice provided to The Toledo Hospital afforded it ample time to protect its rights. As such, the notice comports with constitutional due process and the appropriate notice standard of § 342(a). Having made this determination, the additional issue raised by the Parties, concerning the imputation of notice to The Toledo Hospital by way of its three agents, has been rendered moot.

## EQUITABLE CONSIDERATIONS

In the event it was determined that it had adequate notice of the Debtor's bankruptcy case, The Toledo Hospital asks that this Court equitably toll the time limit imposed by Bankruptcy 4007(c). (Doc. No. 32, at pgs. 5-6). As support for this position, The Toledo Hospital cites to the case of *Nardei v. Maughan (In re Maughan)*, 340 F.3d 337 (6th Cir. 2004).

In *In re Maughan*, the bankruptcy court entered an order, upon the creditor's motion, requiring that the debtor appear at a Bankruptcy Rule 2004 examination. *Id.* at 339-40. Although he appeared for the examination, the debtor failed to comply fully with the order to produce certain documents, but promised that he would promptly produce the needed documents. *Id.* at 340. While waiting for the debtor to produce the documents, the deadline for filing a complaint to determine dischargeability under Bankruptcy Rule 4007(c) passed. *Id.* Three days after the deadline had expired, the creditor sought an extension of time to file an adversary complaint under § 523(c). *Id.*

Page 12

The bankruptcy court granted the creditor's request. *Id.* The debtor appealed, arguing that, because the rule was jurisdictional, the bankruptcy court had no authority to extend the deadline set forth in Bankruptcy Rule 4007(c).

On appeal, the Sixth Circuit Court of Appeals disagreed with a number of other circuit courts, holding that the time limit imposed by Bankruptcy Rule 4007(c) is not jurisdictional, but rather "a statute of limitation – or simply a deadline – that is generally subject to the defenses of waiver, estoppel, and equitable tolling." *Id.* at 343-44.[5] Based upon this conclusion, the Court held that the bankruptcy court did not abuse its discretion in extending the time to file a complaint to determine dischargeability. *Id.* at 344. In doing so, the Court noted that the creditor was under a duty to investigate the debtor before it filed its complaint, and that the debtor's dilatory behavior was the real problem. *Id.* It also observed that the creditor was working diligently to resolve the controversy and that the creditor filed its motion for an extension only three days outside of the rule. *Id.*

For its decision, the Court in *In re Maughan* held that the following five factors should be considered when determining whether to apply the doctrine of equitable tolling: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Id.*

---

[5] This conclusion seems to have been implicitly upheld by the United States Supreme Court. Not long after the Court reached its decision in *In re Maughan*, the United States Supreme Court issued its decision in *Kontrick v. Ryan*, 540 U.S. 443, 124 S.Ct. 906 (2004). In this case, the Supreme Court concluded that the 60-day deadline for objecting to a debtor's discharge under Bankruptcy Rule 4004 is not jurisdictional. As such, the Court in *Kontrick* ruled that a party forfeited the right to raise the deadline set forth in Bankruptcy Rule 4004 after it lost the case on the merits. In reaching its decision, the Court in *In Kontrick* noted the "practical identity" of Bankruptcy Rules 4004 and 4007. *Id.* at 448, 124 S.Ct. at 911, fn. 3.

Page 13

In re: Thomas and Jennifer Stough
Case No. 11-35232

In assessing these factors in this case, the first two do not operate in favor of The Toledo Hospital. As previously set forth, it can be presumed that the notice sent by the Bankruptcy Noticing Center was actually received by The Toledo Hospital, notwithstanding the minor addressing error. Thus, it follows that The Toledo Hospital received actual notice of the Debtor's bankruptcy filing in time to permit it to file a dischargeability complaint within the deadline set by Bankruptcy Rule 4007(c). For this purpose, actual notice may be defined as "such notice as is positively proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." BLACK'S LAW DICTIONARY 1061-62 (6th ed. 1990).

Even if actual notice were found to be lacking, because the notice of the Debtor's bankruptcy was not forwarded to the proper party, The Toledo Hospital must still be deemed to have received constructive notice of the Debtor's bankruptcy in time to permit it to file a complaint to determine dischargeability. It has been remarked that constructive notice may be "defined, crudely, as a rule in which if you should have known something, you'll be held responsible for what you should have known." *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 237 (5th Cir.1998). In this way, this Court has discounted the argument that a lack of notice can be predicated on a breakdown in internal communication procedures. In *In re Perviz*, this Court explained:

> while an octopus may have eight legs, it is still the same octopus. As a result, bankruptcy law not only requires, but demands, that companies, whether large or small, have in place procedures to ensure that formal bankruptcy notices sent to an internally improper, but otherwise valid corporate address are forwarded in a prompt and timely manner to the correct person/department. As a consequence, [a creditor]'s defense that its collection efforts against the Debtors were merely the result of a flaw in its internal organizational structure—the argument that the right hand does not know what the left hand is doing—falls on deaf ears.

302 B.R. 357, 368 (Bankr. N.D.Ohio 2003).

Page 14

In re: Thomas and Jennifer Stough
Case No. 11-35232

In support of its compliance with the third factor set forth in *In re Maughan* – the diligence in pursuing one's rights – The Toledo Hospital maintains that once the proper party learned of the Debtor's bankruptcy, it took prompt action to protect its right. This position has validity, with the evidence showing that, once it received the Debtor's counterclaim in the workers' compensation matter, wherein a violation of the Bankruptcy Code's automatic stay was alleged, The Toledo Hospital moved promptly to file its Motion in this Court for leave to file a complaint to determine dischargeability against the Debtor.

Similarly, the evidence in this case also shows that at all times The Toledo Hospital diligently pursued its claim against the Debtor. For example, The Toledo Hospital repeatedly contacted Debtor's legal counsel in the workers' compensation case. It also brought suit against the Debtor when its communications efforts with Debtor's legal counsel failed.

The Court also agrees with The Toledo Hospital that the Debtor will not be prejudiced if she is forced to defend in a nondischargeability action. In arguing to the contrary, the Debtor cited to these difficulties: the burden of having to shoulder additional legal fees; and potential personal liability on a debt exceeding $60,000.00. Such difficulties, however, are simply the result of The Toledo Hospital's claim against the Debtor, and not the result of a change in the Debtor's position based upon her reliance on The Toledo Hospital failing to file a dischargeability action within the time period prescribed by Bankruptcy Rule 4007(c). Consequently, any prejudice incurred by the Debtor is not of the type which would warrant not applying an equitable remedy in favor of The Toledo Hospital. *See Land Grantors in Henderson, Union, and Webster Counties v. United States*, 64 Fed.Cl. 661, 716 (Fed.Cl.2005) (concluding that defendant could only show prejudice by demonstrating a change in position "that would not have occurred had the plaintiff not delayed").

The last consideration set forth in *In re Maughan* looks to a plaintiff's reasonableness in remaining ignorant of the notice requirement. It is here, that the Court finds, that the balance tips in

Page 15

In re: Thomas and Jennifer Stough
Case No. 11-35232

favor of the Debtor. In her bankruptcy filing, the Debtor scheduled The Toledo Hospital, as well as three of its agents, going beyond that required by bankruptcy law for a debtor when listing their creditors. The Toledo Hospital was, thus, afforded notice beyond that received by other creditors who come before this Court. There is, thus, no reasonable basis for The Toledo Hospital to have remained ignorant of the Debtor's bankruptcy for so long a duration.

To holding otherwise, and find the situation presented by The Toledo Hospital reasonable, would, in this Court's estimation, open the door to a wide range of other creditors who could likewise claim that they should be entitled to file an adversary proceeding outside the 60-day time limit of Bankruptcy Rule 4007(c). The Court is simply not willing to open the door that wide. This is particularly true considering that the Supreme Court of the United States has admonished that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396, 127 S.Ct. 1091, 1101, 166 L.Ed.2d 973 (2007).

Moreover, as was the situation in *In re Maughan*, equitable tolling is normally only appropriate where the plaintiff had been misled or where evidence had been fraudulently concealed. *See Diamonds v. Yashaya (In re Yashaya)*, 403 B.R. 278, 286 (Bankr. E.D.N.Y.2009). Such a situation, however, is not present, contrary to the protestations of The Toledo Hospital. In particular, the Court rejects the argument put forth by The Toledo Hospital that the Debtor mislead it by failing to make an attempt to contact it directly regarding the bankruptcy case – *e.g.*, by placing a phone call to its legal counsel. (Doc. No. at pgs. 7-8).

To be sure, this may have been a courteous gesture. At the same time, the Court is not willing to penalize the Debtor for failing to take such an action, given her otherwise legitimate efforts to provide notice to The Toledo Hospital, as well as three of its agents. Colloquially speaking, the Debtor sent The Toledo Hospital two boats and a helicopter.

Page 16

In re: Thomas and Jennifer Stough
Case No. 11-35232

At the same time, this Court's decision should in no way be construed so as to condone the Debtor's actions. In the eyes of the Industrial Commission of Ohio, the Debtor committed fraud, a finding which would seem to leave the Debtor vulnerable to the imposition of criminal penalties which would not likely be stayed by her bankruptcy discharge. *See* 11 U.S.C. § 523(a)(7). Nevertheless, in enacting § 523(c)(1), Congress specifically provided that the type of claim held by The Toledo Hospital against the Debtor would be discharged unless a timely action to determine dischargeability was brought. For creditors who failed to meet the deadline, Congress also provided a specific remedy in § 523(a)(3)(B). As a result, the underlying nature of the debt in this case does not change the equitable considerations just outlined.

In conclusion, the Court finds that the notice provided by the Debtor, even though containing a minor addressing error, afforded The Toledo Hospital adequate notice of the Debtor's bankruptcy case so as to comport with the requirements of constitutional due process and the adequate notice standard of § 342(a). Additionally, on the basis of equity, the factors set forth in *In re Maughan* do not, when considered as a whole, warrant extending the deadline set forth in Bankruptcy Rule 4007(c). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 17

In re: Thomas and Jennifer Stough
Case No. 11-35232

Accordingly, it is

**ORDERED** that the Motion of The Toledo Hospital, Inc. for Leave to File an Adversary Complaint, be, and is hereby, DENIED

Dated: June 29, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 18

# CERTIFICATE OF SERVICE

Copies were mailed this 29th day of June 2012 to:

Bruce C French
PO Box 839
Lima, OH 45802-0839

HSBC Bank Nevada, N.A.
3936 E. Ft. Lowell Road, # #200
Tucson, AZ 85712

Patti H. Bass
3936 E. Ft. Lowell Rd. #200
Tucson, AZ 85712

Jennifer Ann Stough
6937 Yarberg
Whitehouse, OH 43571

Scott A Ciolek
520 Madison Avenue Suite 820
Toledo, OH 43604

Thomas Lee Stough, Jr
509 Elliot
Van Wert, OH 45891

Michael A Gonzalez
4 SeaGate 8th Fl
Toledo, OH 43604

                                                  /s/Jennifer S Huff
                                           Deputy Clerk, U.S. Bankruptcy Court